R. DOUGLAS STUART, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 97501.   Promulgated November 29, 1940.

*Herbert Pope, Esq., Preston B. Kavanagh, Esq.,* and *Benjamin M. Price, Esq.,* for the petitioner.
*D. A. Taylor, Esq.,* for the respondent.

1424

OPINION.

HARRON: The basic question is whether petitioner was taxable in 1934 and in the first seven months of 1935 on the entire net income of the four trusts which he created for the benefit of his four minor children.

In computing the deficiencies in petitioner's income tax for 1934 and 1935, respondent included in petitioner's taxable income the entire net income of the four trusts during 1934 and during the period from January 1 to August 2, 1935, on which date the trust indentures were amended to provide that they were "irrevocable and not subject to alteration, change or amendment." In the deficiency notice respondent grounded his determination on section 166 (2) of the Revenue Act of 1934. In an amended answer and in his brief respondent supports his determination under sections 167 (a) and 22 (a) of the Revenue Act of 1934, as well as under section 166 (2).

The pertinent provisions of section 166 (2) of the Revenue Act of 1934 are as follows:

Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

* * * * * * *

(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom,

then the income of such part of the trust shall be included in computing the net income of the grantor.

Respondent contends that section 166 (2) is applicable because under paragraph ninth of the trust indentures power was vested in petitioner's wife and his brother to revest title to the corpora of the trusts in petitioner and because petitioner's wife and his brother did not have substantial adverse interests in the disposition of the corpora of the trusts or the income therefrom. Petitioner asserts that no power to revest title to the corpora of the trusts in petitioner was vested in petitioner's wife and his brother under paragraph ninth, and that even if such power were vested in petitioner's wife and brother, they

had substantial adverse interests in the disposition of the corpora of the trusts and the income therefrom.

In support of his assertion that no power to revest title to the corpora of the trusts in petitioner was vested in petitioner's wife and his brother under paragraph ninth, petitioner argues that the powers given to petitioner's wife and his brother under that paragraph could be exercised only in the interests of the beneficiaries named in the trust indentures. Petitioner points to the fact that under the trust indenture no power is given expressly to his wife and his brother to revest title to the corpora of the trusts in him, that he is not named as a beneficiary in the trust indentures, and that under paragraph eighth of the trust indentures he is given a power to withdraw the whole or any part of the corpora of the trusts *only* upon first delivering to the trustees other property satisfactory to the trustees "of a market value at least equal to that of the property withdrawn." Petitioner relies on *Higgins* v. *White*, 93 Fed. (2d) 357; *Knapp* v. *Hoey*, 24 Fed. Supp. 39; affd., 104 Fed. (2d) 99; *Phebe Warren McKean Downs*, 36 B. T. A. 1129; and *Ellsworth B. Buck*, 41 B. T. A. 99.

To determine whether under paragraph ninth power was vested in petitioner's wife and his brother to revest title to the corpora of the trusts in petitioner, that paragraph must be interpreted in accordance with the intent of the petitioner as gathered from the trust indentures in their entireties. *Ellsworth B. Buck, supra.* It is sufficient if the powers given to petitioner's wife and his brother under paragraph ninth amounted *in fact* to a power to revest title to the corpora of the trusts in petitioner. *Ralph Pulitzer*, 36 B. T. A. 964; cf. *Bowler* v. *Helvering*, 80 Fed. (2d) 103.

An examination of paragraph ninth in the light of the principles set forth above compels the conclusion that petitioner's wife and his brother had the power to revest title to the corpora of the trusts in petitioner within the meaning of section 166 (2). Under paragraph ninth of each trust indenture, petitioner's wife and his brother were given "full power * * * to alter, change or amend this indenture at any time and from time to time by changing the beneficiary hereunder, or by changing the time when the Trust Fund, or any part thereof, or the income, is to be distributed, * * * or in any other respect." Under the provisions of paragraph ninth the powers given to petitioner's wife and his brother were absolute, and these absolute powers were not limited by any other provisions of the trust indentures. Cf. *Fulham* v. *Commissioner*, 110 Fed. (2d) 916. The provisions of paragraph eighth limited only the right which petitioner reserved in that paragraph to withdraw the corpora of the trusts and did not limit the absolute powers granted to petitioner's wife and his brother in paragraph ninth. As donees of absolute powers, petitioner's wife and his brother could exercise the powers in favor of petitioner. See *Frank*

v. *Frank*, 305 Ill. 181; 137 N. E. 151; Perry, Trusts and Trustees, 7th ed., vol. I, p. 453; Farwell, Powers, 2d ed., p. 8. Since under paragraph ninth petitioner's wife and his brother had the power at any time to amend the trust indentures to make petitioner the sole beneficiary of the trusts and to provide for immediate distribution of the corpora to him, they had, in fact, the power to revest in petitioner title to the corpora of the trusts within the meaning of section 166 (2). Cf. *Ralph Pulitzer, supra.*

The cases relied on by petitioner in support of his argument that the powers given to petitioner's wife and his brother under paragraph ninth were limited are distinguishable. In *Higgins* v. *White, supra,* the power to revest the corpus in the grantor, which was vested in the grantor and his cotrustees, was to be exercised only if "the trustees shall deem it wise so to do" and was thus a fiduciary power as distinguished from an absolute power. See *Fulham* v. *Commissioner, supra.* In *Knapp* v. *Hoey, supra; Phebe Warren McKean Downs, supra;* and *Ellsworth B. Buck, supra,* the grantor included in the trust indenture an express provision to the effect that the trust was irrevocable.

Petitioner argues next that, if the powers given to his wife and his brother under paragraph ninth were so broad that they had the power to revest in petitioner title to the corpora of the trusts, they also had the power to amend the trust indentures to make themselves the beneficiaries of the trusts, and thus had substantial adverse interests in the disposition of the corpora of the trusts and the income therefrom within the meaning of section 166 (2). In support of this argument petitioner relies on *Laura E. Huffman*, 39 B. T. A. 880.

On March 25, 1932, the date on which the trusts were created, section 166 of the Revenue Act of 1928 had not yet been amended by the Revenue Act of 1932 and provided that the grantor of a trust was taxable on the trust income where he had "at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust." In the trust indentures petitioner reserved no power to revest in himself title to any part of the corpora of the trusts either alone or in conjunction with his wife and brother. Shortly after the trusts were created section 166 was amended by the Revenue Act of 1932. For present purposes section 166 was substantially the same under the 1934 Act as under the 1932 Act. The legislative purpose for the amendment of section 166 in the 1932 Act was "to block a possible means of tax avoidance by the device of vesting the power to revoke the trust in some person other than a beneficiary, whereby in fact the grantor may retain 'substantially the same control as if he alone had power to revoke the trust'." *Fulham* v. *Commissioner, supra;*

see Report of the Senate Committee on Finance, S. Rept. No. 665, 72d Cong., 1st sess., p. 34.

In *Fulham* v. *Commissioner, supra,* the taxpayer conveyed certain property in trust to himself and another as cotrustees. The trustees were to accumulate the income of the trust until the death of the taxpayer's wife. During the life of the taxpayer's wife the trustees were empowered to pay her "at any time or from time to time any part or parts or the whole of the principal and/or accumulated income" of the trust. After the death of the taxpayer's wife the trustees were to pay the income, and eventually the principal, to the children of the taxpayer and their issue. Power to revoke the trust and revest the corpus in the taxpayer was vested in a committee subject to the consent of the taxpayer's wife. Petitioner conceded that the committee did not have a substantial adverse interest in the disposition of the corpus or the income therefrom, but maintained that the taxpayer's wife did have such a substantial adverse interest. In holding that the taxpayer's wife did not have a substantial adverse interest in the disposition of the corpus or the income therefrom within the meaning of section 166 (2) of the Revenue Act of 1934, the Circuit Court stated in part as follows:

The evident policy of the Revenue Act is to tax the income to the grantor of a trust when he retains the substantial mastery over the corpus. Even though in form he lodges the power of revocation in someone other than himself, Section 166 is founded on the reasonable premise that the grantor still retains practical mastery, when this power is given to someone having no stake in the trust, or a stake so insubstantial that the holder of the power would not improbably be amenable to the grantor's wishes. This calls for a realistic appraisal.

\* \* \* \* \* \* \*

Upon appraisal of the trust instrument against a background of realities, we are convinced that this is a typical arrangement, falling within Section 166, where the grantor retains the controlling hand over something he has seemed to give away.

In considering whether the taxpayer's wife had a substantial adverse interest within the meaning of section 166 (2), the Circuit Court in the *Fulham* case stated that the observations of the Supreme Court in *Helvering* v. *Clifford,* 309 U. S. 331, were pertinent, though made in respect to section 22 (a). In the *Clifford* case the taxpayer declared himself trustee of certain property. The trust was to terminate at the end of five years or on the earlier death of the taxpayer or his wife. During the continuance of the trust the taxpayer was to pay over to his wife the whole or such part of the net income as he in his "absolute discretion" might determine. On termination of the trust the entire corpus was to go to the taxpayer and all undistributed net income was to go to his wife. During the continuance of the trust the taxpayer retained broad powers of control over the corpus. During the year 1934 all the trust income was distributed to the taxpayer's wife. The parties stipulated that the taxpayer's wife had substantial income of her own from other sources; that there was no restriction on her use

of the trust income; that the trust was not designed to relieve the taxpayer from liability for family or household expenses; and that after the creation of the trust the taxpayer paid large sums from his personal funds for family and household expenses. The Supreme Court held that the taxpayer was taxable on the income of the trust under section 22 (a) of the Revenue Act of 1934. The Supreme Court stated in part that "the short duration of the trust, the fact that the wife was the beneficiary, and the retention of control over the corpus by respondent all lead irresistibly to the conclusion that respondent continued to be the owner for purposes of section 22 (a)", and made the following observation:

* * * To hold otherwise would be to treat the wife as a complete stranger; to let mere formalism obscure the normal consequences of family solidarity; and to force concepts of ownership to be fashioned out of legal niceties which may have little or no significance in such household arrangements.

To determine whether petitioner's wife and his brother had substantial adverse interests within the meaning of section 166 (2), the trust indentures must be appraised "against a background of realities," *Fulham* v. *Commissioner, supra*. The record in this proceeding does not furnish by itself a complete background of "realities." Although this proceeding and the proceeding brought by petitioner's brother, John Stuart, Docket No. 97500, were not consolidated for hearing, this proceeding was heard immediately after the proceeding brought by petitioner's brother and the two proceedings admittedly involve substantially similar questions and facts. Therefore, in order to appraise the trust indentures against a complete background of "realities" the Board may notice the record in the proceeding brought by petitioner's brother. *O'Donnell* v. *United States*, 91 Fed. (2d) 14; Wigmore, Evidence, 3d ed., 1940, sec. 2579. The record in the proceeding brought by petitioner's brother shows, *inter alia*, that in 1930 petitioner's brother executed three trust indentures by which he created three separate trusts, one for the benefit of each of his three children; that petitioner's brother named himself, his wife, and petitioner as the trustees of each trust; that petitioner's brother was the president of the Quaker Oats Co.; that petitioner's brother transferred 700 shares of the common stock of the Quaker Oats Co. to the trustees of each trust; that the provisions of each of the three trust indentures executed by petitioner's brother were substantially the same as the provisions of the four trust indentures executed by petitioner; that under paragraph ninth of the three trust indentures executed by petitioner's brother the very same powers were given to his wife and to petitioner as were given to petitioner's wife and his brother under paragraph ninth of the four trust indentures executed by petitioner; and that on August 3, 1935, the wife of petitioner's brother and petitioner executed an amendment to the three trust indentures executed by petitioner's brother changing

paragraph ninth to provide that the trusts were "irrevocable and not subject to alteration, change or amendment."

An appraisal of the trust indentures against a background of "realities" thus completed by the record in the proceeding brought by petitioner's brother leads to the conclusion that petitioner's wife and his brother did not have substantial adverse interests in the disposition of the corpora of the trusts or the income therefrom within the meaning of section 166 (2). Petitioner's wife and his brother had no actual stakes in the trusts as beneficiaries. Cf. *Corning* v. *Commissioner*, 104 Fed. (2d) 329; *Laura E. Huffman, supra;* and *Daniel P. Woolley*, 39 B. T. A. 802. At best they had only potential stakes in the trusts by reason of the powers given them under paragraph ninth. However, the powers under paragraph ninth were given them only for the duration of petitioner's life, cf. *Laura E. Huffman, supra;* and during their joint lives the powers under paragraph ninth could be exercised only by their joint action. See *Bowler* v. *Helvering, supra*.

In the light of the "realities", the potential stakes which petitioner's wife and his brother had in the trusts were so insubstantial that they "would not improbably be amenable to the grantor's wishes." *Fulham* v. *Commissioner, supra*. The interests of petitioner's wife and his brother appear to be identical with those of petitioner. Cf. *Laura E. Huffman, supra*. With respect to the interests of petitioner's wife, the observations made by the Supreme Court in *Helvering* v. *Clifford, supra*, are as pertinent here as they were in *Fulham* v. *Commissioner, supra*. There is no more ground here for treating petitioner's wife as a complete stranger than there was in the *Clifford* or *Fulham* cases. The stake of petitioner's wife in the trusts here was no more substantial than was the stake of the taxpayer's wife in the trust in the *Fulham* case. To hold that the interests of petitioner's wife were adverse to those of petitioner would be "to let mere formalism obscure the normal consequences of family solidarity." *Helvering* v. *Clifford, supra*. Furthermore, the interests of petitioner's brother were not only linked to those of petitioner by a close family relationship, but by a close business relationship as well. Petitioner and his brother were, respectively, the first vice president and the president of the Quaker Oats Co. The original corpora of the four trusts created by petitioner and of the three trusts created by his brother consisted of common stock of the Quaker Oats Co. Petitioner was one of the trustees of the three trusts created by his brother, and his brother was one of the trustees of the four trusts created by petitioner. In the four trusts created by petitioner the donees of the power to revest title in him were his wife and his brother, and in the three trusts created by petitioner's brother the donees of the power to revest title in him were his wife and petitioner. The natural result of this cross-relationship was that petitioner's brother would be amenable to the wishes

of petitioner in the conduct of the four trusts created by petitioner and that petitioner, in turn, would be amenable to the wishes of his brother in the conduct of the three trusts created by his brother. That the interests of petitioner's wife and his brother were identical with those of petitioner is borne out by the fact that on August 2, 1935, petitioner's wife and his brother executed an amendment to each of the trust indentures which provided that each of the trust indentures was "irrevocable and not subject to alteration, change or amendment", and thus destroyed whatever potential stakes in the trusts they had prior thereto, and also by the fact that on August 3, 1935, petitioner and the wife of his brother executed a similar amendment to each of the trust indentures executed by his brother. Against such a background of "realities" it cannot be held that the potential stakes which petitioner's wife and his brother had in the trusts clothed them with substantial adverse interests within the meaning of section 166 (2). *Fulham* v. *Commissioner, supra.*

Since under paragraph ninth of the trust indentures power to revest in petitioner title to the corpora of the trusts was vested in his wife and his brother, and since his wife and his brother did not have substantial adverse interests in the disposition of the corpora of the trusts or the income therefrom, it is held that petitioner was taxable on the entire net income of the trusts during 1934 and during the period from January 1 to August 2, 1935, under section 166 (2) of the Revenue Act of 1934. *Fulham* v. *Commissioner, supra.* In view of this conclusion it is not necessary to consider the further contentions made by respondent that petitioner was also taxable on the entire net income of the trusts during the period in question under sections 167 (a) and 22 (a) of the Revenue Act of 1934.

*Decision will be entered under Rule 50.*