Edwin C. May v. Commissioner. Herbert L. May v. Commissioner. Estelle May Affelder v. Commissioner. Estate of Walter A. May, deceased, Mollie B. May and Edwin C. May, Executors v. Commissioner.
May v. Commissioner
Docket Nos. 110643, 110830, 110882, 110942.
United States Tax Court
1944 Tax Ct. Memo LEXIS 173; 3 T.C.M. (CCH) 733; T.C.M. (RIA) 44243; July 22, 1944
*173 Mays' Fifth Avenue Trust Barney May and his three sons, Walter A. May, Edwin C. May, and Herbert L. May, in 1917 created a trust naming themselves trustees to hold the title to a parcel of jointly owned real estate, then under lease for a term of years, and to distribute the income therefrom to their wives for their lives and thereafter to themselves for their lives, with the remainders over to their children. The grantors reserved no powers to revoke, alter or amend the trust or to change the beneficial interest therein. Held, that the income of the trust for 1936, 1937 and 1938 is not taxable to the grantors under section 22(a) of the Revenue Acts of 1936 and 1938; held, further, that in computing the net income of the trust no deductions are allowable in the taxable years for depreciation on the building erected on the premises by the lessees at their own cost; held, further, that no deductions are allowable to the trust for exhaustion of the lease which the grantors assigned to the trust along with title to the land, and which had no cost or other depreciable basis in the hands of the grantors. 1917 Edwin C. May Trust 1917 Herbert L. May Trust 1917 Walter A. May *174 Trust The three above named May brothers in 1917 created three separate trusts identical in form to which each transferred a portion of his holdings in May Drug Co. The income of each trust was to be paid to the grantor's wife for life, except that in case of her divorce or separation from the grantor it might be paid to the grantor for life, and thereafter to his nominees, with remainder over to the income beneficiaries at the time of termination. In each trust the grantor named his wife and his two brothers as trustees. The grantors retained no power to revoke, alter or amend the trusts or to change the vested beneficial interests. Held, that the grantors are not taxable on the income of the trusts for 1936, 1937 and 1938 under sections 22(a), 166, or 167. Mr. and Mrs. Walter A. May Trust Mr. and Mrs. Edwin C. May Trust H. L. May Fund Walter A. May, Edwin C. May and Herbert L. May in 1923, 1924 and 1929, respectively, created three separate trusts for the purpose of continuing payments and contributions which they and their wives had been making to relatives and various charitable and other institutions. The first two named grantors appointed as trustees, themselves, their *175 wives, and their two brothers, and reserved to themselves the right to designate the beneficiaries from year to year. Later they amended the trusts to provide that they could make such designations only with the consent of a trustee. During 1937 they relinquished all rights to designate the beneficiaries, leaving their wives such rights, and resigned as trustees of the trusts which they created. The wives held no beneficial interest in the income or principal of the trusts. In the third trust the grantor named himself and his two brothers trustees and gave the trustees the right to designate the beneficiaries from year to year. In 1937 he resigned as trustee and was succeeded by his daughter who was also named as a contingent beneficiary of a portion of the remainder of the trust principal. Held, that the income of all of the trusts for 1936, 1937 and 1938 is taxable to the grantors under section 22(a). H. L. May 1931 Trust During 1936, 1937 and 1938 Herbert L. May was the grantor of a trust the income of which was payable to his wife for life and thereafter to himself for life, with remainder over. During the taxable years, after January 10, 1936, the trustees consisted of *176 the grantor and his two brothers. The grantor reserved to himself the right to revoke, alter or amend the trust in any manner not beneficial to himself without the consent of any other person. Held, that the income of the trust is taxable to the grantor under section 22(a) by reason of his power to change the beneficial interests therein at will. Loss on stock of Madison Mortgage Corporation Prior to and during 1936 petitioner Herbert L. May was required to purchase certain shares of stock of a corporation, of which he was an organizer and stockholder, from persons who had purchased them upon his written guaranty against losses. Held, that the amounts which petitioner paid for the shares are deductible in 1936 when the shares became worthless; held, further, that no loss deduction is allowable on other shares which petitioner purchased in 1936 without legal obligation. Charles H. Sachs, Esq., 1124 Frick Bldg., Pittsburgh, Pa., for the petitioners. W. J. McFarland, Esq., for the respondent. SMITH
Memorandum Opinion SMITH, Judge: These proceedings, consolidated for hearing, involve income tax deficiencies for 1936, 1937 and 1938 as follows: Docket
No.
Petitioner
Year
Deflciency
110643
Edwin C. May
1936
$ 3,592.63
1937
14,810.16
1938
10,188.32
110830
Herbert L. May
1937
9,135.85
1938
4,594.84
110882
Estelle May
1936
1,357.31
Affelder
1937
2,135.28
1938
1,919.75
110942
Estate of
1936
8,985.76
Walter A. May
1937
11,479.55
1938
8,175.24
*177 The returns of Edwin C. May, Herbert L. May and Estelle May Affelder for the taxable years involved were filed with the collector of internal revenue for the twentythird district of Pennsylvania at Pittsburgh. The returns of Walter A. May (now deceased) for the taxable years involved were filed with the collector of internal revenue at Baltimore, Maryland. Some of the issues raised in each of the proceedings have been settled by stipulation which will be given effect under Rule 50. The principal issues remaining for our determination, some of which are common to all of the petitioners, are whether petitioners are taxable, either under section 22 (a), section 166, or section 167 of the Revenue Acts of 1936 and 1938, on the income and capital gains of certain trusts which they created, either alone or in conjunction with others. Altogether there are nine separate trusts involved. The issues relating to one of them, the Mays' Fifth Avenue Trust, are common to all of the petitioners. The trusts involved in each proceeding are as follows: Edwin C. May, Docket No. 110643 Mays' Fifth Avenue Trust 1917 Edwin C. May Trust Mr. and Mrs. Edwin C. May Trust Herbert L. May Docket No. *178 110830 Mays' Fifth Avenue Trust 1917 Herbert L. May Trust H. L. May Fund H. L. May 1931 Trust Estelle May Affelder, Docket No. 110882 Mays' Fifth Avenue Trust Estelle May Affelder Trust Estate of Walter A. May Docket No. 110942 Mays' Fifth Avenue Trust 1917 Walter A. May Trust Mr. and Mrs. Walter A. May Trust For convenience and to save needless repetition the trusts, where they bear sufficient similarity, will be arranged in groups according to their common characteristics and those of each group will be discussed collectively. Mays' Fifth Avenue Trust stands alone. It was created by the petitioners [1] jointly in 1917 to hold the title to a single piece of real estate located on Fifth Avenue, Pittsburgh, Pa. The 1917 Edwin C. May Trust, the 1917 Herbert L. May Trust and the 1917 Walter A. May Trust were all created on October 1, 1917, for the purpose of holding and managing controlling shares of stock of May Drug Co. and certain beneficial interests in Mays' Trade *179 Rights Trusteeship. The Mr. and Mrs. Walter A. May Trust, the Mr. and Mrs. Edwin C. May Trust and the H. L. May Fund were created during the years 1923, 1924 and 1929, respectively, for the purpose of providing for "payments and contributions for charitable, scientific, educational and kindred purposes, and for deserving persons, associations and corporations." The H. L. May 1931 Trust was created March 21, 1931, by Herbert L. May. Originally it was a short term trust for the benefit of the grantor's wife. The grantor later extended the trust from time to time with substantial changes in form. The only issues raised as to the Estelle May Affelder Trust have been settled by stipulation. In addition to the question of the liability of the petitioners for tax on the income of one or more of the above named trusts there are several issues relating to the determination of the net income of the trusts and others not related to the trusts. A separate written stipulation of facts has been submitted in each proceeding which we incorporate herein by reference. Other evidence in the form of oral testimony and documents was introduced at the hearing. Mays' Fifth Avenue Trusts Issue *180 (1). - Liability of grantors for tax on trust income [The Facts] This trust was created July 3, 1917, by Barney May, his three sons, Edwin C. May, Herbert L. May, and Walter A. May (now deceased), and their wives. The father and the three sons were designated trustees. The trust property consisted of a parcel of real estate located on Fifth Avenue near Smithfield Street, Pittsburgh, Pa., which the grantors owned as tenants in common. At the time of the creation of the trust the property was under lease to Jacob H. Frank and Isaac Seder, partners doing business as Frank & Seder, for use as a department store site. This lease was entered into March 1, 1917, for a term of 21 years and 2 months at a total net rental of $1,070,333.33, payable at the rate of $4,333.33 monthly, beginning October 1, 1917, plus taxes, water rent, insurance, and all street or other municipal improvements which might be made against the property. The trust agreement provided that one-fourth of the net income of the trust should be paid to the wife of each of the grantors for life and after the wife's death to the grantor for life and upon his death to their children, if any survive, or, if not, to their *181 appointees or heirs-at-law. The trust was to exist for a term of five years after the death of the last survivor of a group of fifteen individuals composed of the grantors and their wives and children. Upon termination of the trust the principal was to be distributed to the persons then entitled to the income, and in the same proportion. The trustees were given broad administrative powers including the power to mortgage or sell the trust property and reinvest the trust funds. The grantors of the trust as such retained no powers over the management or distribution of either the principal or income of the trust and no power to alter or amend the trust agreement. Barney May died in May, 1921, and his wife, Pauline, having predeceased him, his 25 percent interest in the trust was divided equally among his children, petitioners herein. Lillian B. May, wife of Herbert L. May, died prior to 1936 and her interest passed to Herbert L. May. The respondent has determined that the grantors are taxable on the income of the trust for all of the taxable years involved. The net income of the trust for the years 1936, 1937 and 1938 as reported by the trustees and as determined by the respondent *182 was as follows.. Net Income
Year
Reported
Determined
1936
$25,686.06
$44,474.70
1937
44,532.76
56,397.91
1938
38,460.45
50,361.48
The ratio of the distribution of such income as reported by the trustees and as determined by the respondent was as follows: Reported
Determined
Herbert L. May
31 1/4%
31 1/4%
Molle B. EMay
25%
Gertrude B. May
25%
Walter A. May
6 1/4%
31 1/4%
Edwin C. May
6 1/4%
31 1/4%
Estelle M. Affelder
6 1/4%
6 1/4%
100%
100%
The respondent's determination is based upon the doctrine of Helvering v. Clifford, 309 U.S. 331, that a grantor is taxable under section 22(a) on the income of trust property over which he retains such broad powers and rights as to remain in substance the owner of the property. We are unable to determine from respondent's brief on this issue upon just what facts or reasoning he seeks to apply section 22(a). He cites several cases, and quotes from the opinions, such as Verne Marshall, 1 T.C. 442, Ellis H. Warren, 45 B.T.A. 379, and Louis Stockstrom, 3 T.C. 255. None *183 of those cases bears much factual resemblance to the instant case and the respondent does not attempt to draw any analogy between them. We do not think that the facts here afford a proper basis for application of the doctrine of the Clifford case. Although the trust is one that might be termed a family trust, inasmuch as its grantors were a father and his three sons and the beneficiaries were wives and children of the grantors, neither the grantors nor the beneficiaries were of one household or of a single economic group. See Commissioner v. Branch, 114 Fed. (2d) 985; John Stuart, 2 T.C. 1103. Not all so-called family trusts come within the rule of the Clifford case. See Helvering v. Stuart, 317 U.S. 154; Kraft v. Commissioner ( C.C.A., 3rd Cir.), 111 Fed. (2d) 370; certiorari denied. 311 U.S. 671; Commissioner v. Chamberlain (C.C.A., 2nd Cir.), 121 Fed. (2d) 765; Helvering v. Elias (C.C.A., 2nd Cir.), 122 Fed. (2d) 171; certiorari denied, 314 U.S. 692; *184 Commissioner v. Armour (C.C.A., 7th Cir.), 125 Fed. (2d) 467. In addition to the close family relationship between the grantors and the beneficiaries there must be the elements of continuing control over the property by the grantors and of economic gain to the grantors. In Helvering v. Stuart, supra, it was said that "economic gain for the taxable year, as distinguished from the nonmaterial satisfactions. may be obtained through a control of a trust so complete that it must be said the taxpayer is the owner of its income." In support of such proposition Helvering v. Clifford, supra, was cited. Here the grantors of the trust as such retained no control over either corpus or income of the trust. The powers which they retained as trustees were essentially administrative powers. They had no power as trustees or grantors to change the beneficiaries or to change the beneficial interests either as to the time or quantum of the distributions. In these circumstances we think that the gifts in trust were complete and that the grantors are not taxable on the income of the trust under section 22(a). *185 Issue (2). - Depreciation on department store building [The Facts] At the time of the creation of Mays' Fifth Avenue Trust the real estate which the grantors conveyed to the trust was under lease to Jacob H. Frank and Isaac Seder. The lessees had previously operated a department store on this site in a building which was destroyed by fire. As a part of the new lease agreement the lessees covenanted to erect a new building on the premises suitable for such use. The lease was transferred to the trust along with the land. The new building was then in process of construction and was completed soon afterwards at a total cost of $1,718,653.96. The building covered all of the May tract and also the property of adjacent land owners, the May tract comprising only 18.18 per cent of the whole. A portion of the cost of the new building, $398,319.14, was borne by the other land owners and a portion, $47,500, was paid by the lessors out of the proceeds of the insurance on the old building. The cost to the lessees was $1,272,834.82. On February 11, 1925, the parties executed a new lease to begin at the date of expiration of the existing lease, April 30, 1938, and to continue until April 30, *186 1968, at a rental of $75,000 per annum. Both leases were amended to provide for a variable rental based on a percentage,.09 per cent, of the lessees' gross sales, with a minimum guarantee of $35,775 to $48,375 per annum. Mays' Fifth Avenue trust filed fiduciary returns for the years 1936, 1937, and 1938 in which it claimed in each year a deduction for depreciation on the building of $7,089.07, based on a valuation of $354,453.72 and a useful life of 50 years. Total depreciation deductions of $115,760.35 had been claimed, and allowed by the respondent, over the period 1919 to 1935, inclusive. In these proceedings petitioners contend that depreciation deductions are allowable on the building described above, computed on the value thereof at the time of the conveyance of the property to the trust. See sections 23, 113, and 114 of the Revenue Acts of 1936 and 1938. The respondent's position is that neither the trust nor the petitioners individually had any depreciable interest in the building except that represented by the $47,500 which the lessors contributed to the cost of its construction and that since depreciation deductions aggregating $115,760.35 have already been allowed to *187 the trust no additional deductions may be claimed. The trust, upon its creation, acquired legal title to the real estate and to the lease, including whatever interest the grantors had in the building. Our question then is whether the trust as owner and lessor is entitled to take depreciation on that portion of the building which the lessees erected on the premises at their own expense. We think not. The underlying purpose of the statutory allowance for depreciation is to permit a taxpayer to recover the capital investment in wasting assets free of tax. United States v. Ludey, 274 U.S. 295Weiss v. Wiener, 279 U.S. 333. The test to be applied in determining a taxpayer's right to depreciation deductions is "whether the claimant to depreciation is in such a position as to suffer an economic loss as a result of the decrease in the value of the property due to the depreciation." Edith Henry Barbour, 44 B.T.A. 1117; reversed on another issue, 136 Fed. (2d) 486; cert iorari denied, 320 U.S. 778. Except for the *188 $47,500 of fire insurance proceeds neither the trust nor the grantors here had any capital investment in the building. They therefore had no other depreciable interest in it. They have already more than recovered this $47,500 investment through depreciation deductions. It has been held that a lessee who makes capital improvements on leased premises and uses them in carrying on a business is entitled to the depreciation deductions allowable on the improvements, to the exclusion of the lessor. Duffy v. Central R. R. Co. of New Jersey, 268 U.S. 55; Lynch v. Alworth-Stephens Co., 267 U.S. 364; Helvering v. F. & R. Lazarus & Co., 308 U.S. 252; Cogar v. Commissioner, 44 Fed. (2d) 554. In the absence of any agreement to the contrary between the parties improvements made on leased premises by a lessee become the property of the lessor upon the termination of the lease and represent taxable gain to the lessor. Helvering v. Bruun, 309 U.S. 461; Mary E. Evans, 42 B.T.A. 246. Since, and to the extent that, *189 the lessees here bore the cost of constructing the building and had the use of it in the conduct of their business of merchandising they had the right to the deduction for depreciation thereon to the exclusion of the lessor. Helvering v. F. & R. Lazarus & Co., supra;Georgia Ry. & Electric Co. v. Commissioner, 77 Fed. (2d) 897; Commissioner v. Terre Haute Electric Co. Inc., 67 Fed. (2d) 697; certiorari denied 292 U.S. 624. Issue (3). - Exhaustion of lease Petitioners further contend, in the alternative, that deductions should be allowed for depreciation of the lease, based on a fair market value at the time of its transfer to the trust of $500,000 spread over the remainder of the lease term. The lease had no cost to the grantors or to the trust. It was not subject to depreciation allowances in the hands of the grantors. Did the gratuitous transfer of the lease to the trust create in the transferees a right to depreciation deductions which the transferors did not have? Section 23(1) of the Revenue Acts of 1936 and 1938 authorizes the deduction of "a reasonable *190 allowance for the exhaustion, wear and tear of property used in the trade or business." Section 114(a) provides that the basis upon which such allowance shall be computed is the adjusted basis provided in section 113(b) for the purpose of determining the gain upon the sale of property, and section 113(b) provides that the "adjusted basis" shall be the basis provided in section 113(a), with certain adjustments not here material. Section 113(a)(4) provides that "If the property was acquired by gift or transfer in trust on or before December 31, 1920, the basis shall be the fair market value of such property at the time of such acquisition." Sections 113 and 114 do not purport to confer any rights to deductions for depreciation; they merely provide the basis for computing such deductions, as well as the gain or loss upon a sale, where they are allowable under section 23. The statutory test of the right to the deduction is one of reasonableness; that is, reasonable in the light of the purpose of the statute as stated in United States v. Ludey, supra, and like cases. We had under consideration a closely analogous question in Milton H. Friend et al. Trustees, 40 B.T.A. 768. *191 There the estate of a decedent claimed the right to amortization deductions from certain leaseholds on properties which decedent owned at the time of his death and which were included in his gross estate at valuations separate from the remainder interests in the properties. The estate claimed amortization allowances computed on the capitalized value of the rentals to be received under the leases. We denied the deductions on the ground that the estate had no exhaustible interest either in the leasehold or in the buildings which had been erected on the premises at the cost of the lessees. The Circuit Court of Appeals for the Seventh Circuit affirmed, 119 Fed. (2d) 959, saying: Depreciation allowances are limited to depreciable property and exclude assets not of that character. Paducah Water Co. v. Commissioner, 59 App. D.C. 84, 33 F. (2d) 559. These allowances, when permitted, are deductible by the entity that has acquired the asset at some "cost," meaning capital expenditure, or other valuable consideration. Weiss v. Wiener, 279 U.S. 333, 49 S. Ct. 337, 73 L. Ed. 720; *192 Commissioner v. Terre Haute Electric Co., 7 Cir., 67 F. (2d) 697. * * * * *
It is also suggested that Section 113 (a) (5) of the Revenue Act of 1934, 26 U.S.C.A. Int. Rev. Code, § 113 (a) (5), will operate to furnish a cost or other basis which may be amortized by the petitioners. This section is as follows: " § 113. Adjusted basis for determining gain or loss - (a) Basis (unadjusted) of property. The basis of property shall be the cost of such property; except that * * * (5) If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition, * * *" It is plain from a reading of the statute that what is meant is to give the asset, whatever it may be, a basis for valuation for the purpose of determining gain or loss for income tax purposes in the event of a future sale of the asset. The statute can not be construed, even in conjunction with the valuation for estate tax purposes and the payment of that tax, to place the petitioners in the position of a purchaser of the leaseholds for a valuable consideration. Therefore, *193 the contention of the petitioners must fail, and their other contentions must fall with it. It will be noted that section 113(a)(5) to which the court referred makes the same provision with respect to the basis for property acquired by bequest, devise, or inheritance or by a decedent's estate for the decedent as section 113(a)(4) makes with respect to property acquired by gift or transfer in trust on or before December 31, 1920. We think that the same reasoning applies to both subsections and that it is conclusive against petitioners' contentions here. The respondent in his brief tacitly concedes the valuation of $500,000 which petitioners claim for the lease as a separate asset from the land. That valuation is based upon the opinion testimony of two witnesses, one of whom was petitioner Herbert L. May. It was said to represent the price at which the lease might have been sold. Apparently, therefore, it was intended to represent the capitalized value of the rentals to be received over the term of the lease. We are not concerned here with such a value. The grantors conveyed to the trust the present title to the real estate, subject to the lease. The severance and sale of the leasehold *194 would have constituted the sale of an interest in the realty; and an aliquot portion of the cost basis of the property as a whole would have applied against the sale price. The independent value of a leasehold, to a lessor, at any given time, is the present worth of the excess of the rentals payable during the remaining term of the lease over the present worth of the rentals that might be obtained under a similar new lease for a like period. That is to say, the value of a lease is its bonus value. See Northern Hotel Co., 3 B.T.A. 1099; Ralph H. Plumb, 7 B.T.A. 295. The value, if any, of the leasehold in question in the hands of the trust, independently of the land, was not the capitalized value of the rentals to be received but was the capitalized value of such rentals over the capitalized value of the rentals that might have been obtained under a new lease of like kind. The evidence affords no basis for determining that nor does it indicate that there was any such value. The lease in question was entered into March 1, 1917, only about four months prior to the date of its transfer to the trust, July 3, 1917. There *195 is no evidence that the rentals fixed in the lease agreement did not represent the fair market value of the lease at that time, as well as at the time of its acquisition by the trust. We think that this agreement, entered into between strangers in an arm's length transaction only a few months before the basic date, is the best evidence before us of the value of the lease on July 3, 1917. There is no evidence that property values in this location either decreased or increased during the short interval following the execution of the lease or that there was any change in business conditions generally. We conclude on the evidence before us that the lease in question had no cost or other basis for depreciation purposes in the hands of the trust. 1917 Edwin C. May Trust 1917 Herbert L. May Trust 1917 Walter A. May Trust Our questions with respect to these trusts is whether the income is taxable to the grantors under sections 22(a), 166, or 167. [The Facts] All of the trusts were established October 1, 1917, the grantors, Edwin C. May, Herbert L. May, and Walter A. May, each transferring to their respective wives and their two brothers as trustees 1,255 shares of the capital *196 stock of May Drug Co. and 1255/10,000ths of the beneficial interest of May's Trade Rights Trusteeship. In each trust the income was payable, at the discretion of the trustees, to the wife of the grantor for life and after her death to the grantor and after his death to other beneficiaries to be designated by the grantor or others. The trust agreement executed by Edwin C. May, which is substantially the same in form and substance as the others, provides that: "Whereas the Assignor and the said Walter A. May and Herbert L. May, together with Barney May, individually and severally, are the owners of a controlling interest in the capital stock of the May Drug Company, a Pennsylvania corporation, and in May's Trade Rights Trusteeship, * * * "And, whereas, it is deemed advisable by the owners of the said controlling interest that a consistent policy of development of the business and property of the said May Drug Company and of the property of said May's Trade Rights Trusteeship, shall be pursued for the term hereof, and that, for said reason, the said control shall not pass out of the hands of themselves and certain members of their families, and in order to accomplish said objects *197 they have decided to safeguard said policy and said control by the assignment of parts of their respective interests of said controlling ownership to Trustees, the parts assigned to be sufficient to constitute control." The agreement further provided: "b. To pay the net dividends and income thereof, after payment of all taxes, costs and expenses incurred by them, in their discretion, in the performance of the duties hereunder, to the said Gertrude B. May, wife of said Edwin C. May, during her lifetime, and after her decease, to the said Edwin C. May, during his lifetime, and after his decease, to the person or persons designated in an instrument signed and sealed by the Assignor and properly witnessed, and attached to this agreement, said instrument being contained in a sealed enclosure to be opeed at or after the death of the said Assignor and his wife, the said Gertrude B. May, the purpose of enclosing the same in a sealed envelope being to prevent the conduct or attitude of any persons towards the Assignor being affected in any way by a knowledge of the contents of said instrument. "In case of the divorce, or legal or actual separation of the said Gertrude B. May and her said *198 husband, or her remarriage, or the insanity or mental or physical incapacity or incompetency of the said Gertrude B. May, the determination of the existence of an actual separation or of such condition of incapacity or incompetency being left solely to the opinion and discretion of the said Trustees, and to be determined in the same manner as any other official act of said Trustees, the said Trustees are given the discretion and power to divert the whole or any part of said income from said Gertrude B. May to the person or persons that would be next entitled thereto in case of her decease, and the Trustees may, thereafter, in their discretion, resume the payment of the whole or any part of said income to said Gertrude B. May, and again divert the same or any part thereof for any of the above causes, and so on from time to time, the right to exercise said discretion not to be exhausted or used up at any time during the continuance of this Trust." The trustees were given broad administrative powers over the trust corpus similar to those conferred upon the trustees in Mays' Fifth Avenue Trust and were authorized to select successor trustees from certain designated members of the May *199 family and trust companies located in Pittsburgh. The trustees were all to continue for a period of five years following the death of the last survivor of certain named persons including the grantors, their wives and children, and the grantors' sister, Estelle May Affelder, and upon termination the remaining trust property was to be distributed to those who were then entitled to receive the income and in the same proportion. There was no expressed reservation of any right in either the grantors or the trustees to revoke, alter or amend the trusts. The shares of stock of the May Drug Co. and May's trade rights trusteeship originally transferred to the trusts were sold by the trustees in the years 1927 and 1929. During the taxable years 1936, 1937 and 1938 the corpora of the trusts consisted of marketable securities such as government, railroad, municipal and public utility bonds, and listed stocks. The fiduciary income and capital gains of the several trusts for the taxable years before us, which the respondent has included in petitioners' income for those years, were as follows: 1917 Edwin C. May Trust
Fiduciary
Capital
Year
income
gains
1936
$17,285.66
$7,413.39
1937
16,966.79
930.43
1938
13,116.14
4.72
1917 Herbert L. May Trust
1936
$5,973.83
1937
1,811.89
1938
63.81
1917 Walter A. May Trust
1936
$17,277.03
$6,096.63
1937
16,963.23
1,738.32
1938
13,116.52
*200 The wife of Herbert L. May died in 1921 and under the provisions of the trust agreement the distributable income of that trust became payable to him for life. There is consequently no question as to his liability as grantor for tax on such income. The respondent contends first that the grantors of the trusts are taxable on the trust income under section 22(a). The substance of his argument on this point is set forth in his brief as follows: When these so-called "1917 Trusts" are considered as a group and viewed as a whole the conclusion is inescapable that the effect of the whole business was merely to reallocate income within the family group; the wives being the recipients thereof, but the grantors enjoying its indirect benefits; and, when the concurrent creation of the three trusts is recalled, the results left the grantors in substantially the same economic position in which they were prior to the creation of said trusts. Helvering v. Clifford, supra. When the trusts are viewed as an interlocking whole, it becomes readily discernible that the grantors did not divest themselves of title in any permanent or definitive way, nor did they strip themselves *201 of every interest in the subject matter of the trust estate. DuPont v. Commissioner, (1933), 289 U.S. 685. We think that the position taken by the respondent is untenable. The evidence before us indicates that the trusts were intended to be substantial and permanent. One of the purposes for which they were created was to place a controlling interest in the grantors' holdings in May Drug Co. in the hands of trustees for uniform management, and out of the control of the individual grantors. The grantors retained no right during their lives to dispose of the corpus or income. No one of the grantors was a trustee of the trust which he created nor could any one of them alone control the other two trusts of which he was a trustee. We think that there is an absence here, as in Mays' Fifth Avenue Trust, of those elements of ownership and control in the grantors necessary to bring the trusts within the rule of Helvering v. Clifford, supra. We do not think that either section 166 or section 167 is applicable. There was no power vested in the grantors or any other persons at any time to revest in the grantors title to any of *202 the corpus of the trusts (section 166). No part of the income of the trusts was distributable to any of the grantors (section 167), except in case they should separate from their wives. In that event the trust income could be distributed to them at the discretion of the trustees. The wives, who as income beneficiaries held interests in the income adverse to that of the grantors, were trustees but the other two trustees of each trust were brothers of the grantors and they constituted a majority with power to act for the trusts. The respondent argues that by separating from his wife any of the grantors might at any time have become entitled to the income of the trust at the discretion of his brothers who held no adverse interests, and that therefore section 167 is applicable. In this respect the facts are like those in Percy M. Chandler, 41 B.T.A. 165; affd., 119 Fed. (2d) 623, where we denied the Commissioner's contention that section 166 applied by reason of a power reserved to the grantor to terminate the trust and repossess the corpus if for any cause he should separate from his wife. We there said: For this determination, *203 the first reliance is upon article ninth, which provides for the transfer of all the trust property to the grantor and the termination of the trust if Chandler and his wife "shall be separated and cease to cohabit as man and wife for any cause whatsoever and regardless of whomsoever may be at fault." This, it is argued, has the effect of a reservation of power to revest because the condition is wholly within the grantor's control. It is said that by voluntarily separating from his wife, even temporarily, and notifying the trustee of the separation, the grantor may terminate the trust and reacquire the property. This is indeed a cynical view to adopt. It can not be said with any assurance that an attempt by the grantor so to terminate the trust by a factitious separation or ceasing of marital relations would withstand attack in an equity court. Such a power would stultify the remaining provisions, including the restrictions of the indenture, such as that requiring the preservation or substantial replacement of the farm and the apartment. Such an interpretation of the instrument should be supported by evidence of some circumstances to compel it or at least to suggest that the article *204 was more than a provision against a conceivable but remote contingency. We reject it. What we said in the Chandler case applies with no less force to respondent's contention here that the separation clause renders the grantors taxable under section 167. We are of the opinion that none of the distributable income or capital gains of the trusts under consideration are taxable to the grantors under sections 22(a), 166 or 167. As pointed out above, the distributable income of the 1917 Herbert L. May Trust is not here in controversy and presumably has been taxed to Herbert L. May as the successor life beneficiary, after the death of his wife in 1921, under section 162(b). Mr. and Mrs. Walter A. May Trust Mr. and Mrs. Edwin C. May Trust H. L. May Fund [The Facts] These trusts were created, one in 1923, one in 1924, and one in 1929, for the purpose of providing for continuing the payments and contributions which the grantors had been making to numerous persons, institutions, associations and charities. As indicated by the titles, one of the trusts was created by Walter A. May, one by Edwin C. May, and one by Herbert L. May. The Mr. and Mrs. Walter A. May Trust agreement, *205 executed on December 13, 1923, provided in part as follows: "Whereas Walter A. May and wife have for some years made certain annual payments and contributions for charitable, scientific, education and kindred purposes, to certain needy or deserving persons, associations and corporations, and it is the desire of said Walter A. May to insure the continuance of the payment of at least a portion of said contributions, so that there may be a certain degree of permanency thereto, without, however, interfering with the discretion of said Walter A. May and his wife, or those other persons in whose discretion they have confidence, to wit, their co-trustees hereunder, to increase any specific contribution or decrease the same, or to discontinue it and give it elsewhere, or to use both principal and income of the fund herein provided for in such ways and for such general purposes above referred to as they may see fit; * * *" The grantor assigned to himself, his wife, Mollie B. May, and his brothers, Edwin C. and Herbert L. May, as trustees, 10,000 shares of the beneficial interest in May's Trade Rights Trusteeship. The trustees were directed to keep the funds invested, collect the income thereon, *206 and - "* * * to pay each year the net income and such of the principal to such persons, associations or corporations and in such proportions as the said Walter A. May may each year designate in writing, and in case in any year he shall have failed to designate or shall not have designated the beneficiaries for all of the income, the said Mollie B. May shall have the right so to designate the undesignated income for said year, and in case of her failure so to designate as to all or any part of the undesignated income, the majority of the surviving trustees or the sole surviving trustee shall have the right so to designate; after the death of said Walter A. May, the said Mollie B. May, if she survive him, shall have the right so to designate annually as to income and principal to the same extent as said Walter A. May is granted the right above, and in case of her failure so to designate, the majority of the surviving trustees or the sole surviving trustee shall have the right so to designate; in case the said Mollie B. May do not survive the said Walter A. May, then the majority of the surviving trustees or the sole surviving trustee may so designate as to any or all of the undesignated *207 income or principal; provided, however, that the said Walter A. May shall have the right to file with the said Trustees prior to his death a designation as to the disposition of both income and principal remaining after the death of himself and said Mollie B. May, and in case of his failure so to do, the said Mollie B. May, if she survive him, shall have the right to file such a designation with the said Trustees; and provided further that, it being the intention of this instrument that the ultimate distribution of the principal shall be provided for by one of the written designations herein contemplated, in no event shall said ultimate distribution be postponed in such designation later than one year after the death of the survivor of the four Trustees and the substitute Trustee herein named. Any principal remaining after the death of the last survivor of said five persons, the ultimate distribution of which shall not have been provided for by such designation, shall go to the heirs of said Walter A. May. "By the words 'persons, associations or corporations' as used herein is meant such persons, associations or corporations as in the judgment of the person designating shall qualify *208 under the general purposes mentioned in the preamble of this instrument, and the judgment on this matter of the person designating shall be final and conclusive; and no person, association or corporation shall, under the terms of this instrument, or by reason of being designated in any year, be deemed to have any vested interest in the benefits under this instrument, or in any of the income or principal." The trustees were given broad administrative powers over the trust funds and their fiduciary acts were controlled by a majority vote. The grantor as such retained no rights or powers other than those contained in the above quoted provisions of the agreement, except the right to make additional contributions to the trust funds. The Mr. and Mrs. Edwin C. May Trust created December 29, 1924, was in form and substance substantially the same as the Mr. and Mrs. Walter A. May Trust. The grantor, Edwin C. May, named as trustees himself, his wife, Gertrude B. May, and his brothers, Walter A. and Herbert L. May. The original trust funds consisted of 4,000 shares of the beneficial interest in May's Trade Rights Trusteeship. The H. L. May Fund, created in 1929, was somewhat different in *209 form from the other two trusts. The trust corpus consisted of 800 shares of the capital stock of Drug. Inc. The trustees, who were the grantor and his two brothers, Walter A. and Edwin C. May, were directed: "* * * to pay each year the net income and such of the principal to such persons, associations and corporations and in such proportions as a majority of said Trustees, including the said Herbert L. May as long as he may live, may each year designate in writing, and upon the death of said Herbert L. May, to transfer, assign and set over all of the principal then in said Trust Funds to Dorothy M. Rosenthal and Katherine E. Hyam, or the survivor, absolutely and forever, who, without having any trust impressed upon said transfer to them, will nevertheless, it is hoped by the Settlor and the Trustees, distribute the same in accordance with the known wishes of the Settlor, and with the advice of the Trustees. "It is the general purpose of this Trust to provide for payments and contributions for charitable, scientific, educational and kindred purposes, and for deserving persons, associations and corporations. By the words 'deserving persons, associations and corporations' is meant *210 such person, associations and corporations as the person designating shall name in the written designation herein provided for, and the choice, nomination and judgment on this matter of the person designating shall be final and conclusive; and no person, association and corporation shall, under the terms hereof, or by reason of being designated in any year, be deemed to have any vested or contingent interest in the benefits hereunder or in any of the income or principal." On January 1, 1933, the grantors, Walter A. May and Edwin C. May, surrendered their rights, alone, to designate the beneficiaries of their trusts and amended the trust agreements to provide that they should have the rights to make such designations only with the approval of one of the other trustees. On December 9, 1937, they both surrendered all of their rights, either alone or in conjunction with others, to designate beneficiaries of the trusts and resigned as trustees of the trusts which they had created. Under the above quoted provisions of the original trust agreements those rights passed to their wives, and upon failure of the wives to make such designations, then to the trustees. On March 23, 1937, Herbert *211 L. May resigned as trustee of the H. L. May Fund and on May 10, 1937, his daughter, Katherine E. Hyam, was appointed a trustee. Most of the income of all three trusts for the taxable years 1936, 1937 and 1938 was distributed to relatives of the grantors in amounts of from less $100than to over $1,000 a year. The number of beneficiaries and the amounts of their distributions varied with each of the trusts. There were about thirty of the principal beneficiaries of the trusts who were related by blood or marriage to one or more of the grantors. Only comparatively small amounts of the income of the trusts were distributed to nonrelated individuals or to institutions, charitable or otherwise. The respondent has held the grantors of all three trusts taxable in 1936, 1937 and 1938 on income and capital gains of the trusts as follows: Mr. and Mrs. Walter A. May Trust
Year
Income
Capital Gains
1936
$5,181.75
1937
5,537.90
1938
4,541.37
$ 307.25
Mr. and Mrs. Edwin C. May Trust
1936
$6,478.07
$ 765.27
1937
9,306.19
2,185.13
1938
4,737.93
2,205.75
H. I. May Fund
1936
$3,249.99
$2,683.88
1937
3,927.67
23.79
1938
2,768.23
25.82
The respondent's *212 contentions are that the income of the trusts is taxable to the grantors under the provisions of sections 22 (a) or 166, or both. We will take up first the Mr. and Mrs. Walter A. May Trust. During 1936 and until December 9, 1937, the grantor had the right, with the consent of one of the trustees, to designate the beneficiaries of the trust both as to income and principal. The grantor's wife and his two brothers were the trustees. None of them held any interest in the trust principal or income adverse to the grantor's. For that period there is ample support for respondent's determination that the grantor is taxable on the income of the trust under section 22 (a). In Commissioner v. Buck, 120 Fed. (2d) 775, the grantor had the right alone to designate the recipient of income or principal except that he could not exercise the right for his own benefit. Holding the grantor taxable on the income of the trust under section 22 (a), the court said: * * * a potent factor which melts off the grantor's insulation from income taxation is the donors' power to dispose of the income, for that power "is the equivalent of ownership of it." Helvering v. Horst, (1940) 311 U.S. 112, 118, 61 S. Ct. 144, 147, 85 L. Ed. 75, 131 A.L.R. 655; *213 Harrison v. Schaffner, supra [312 U.S. 579]. * * * In Louis Stockstrom, supra, we held that section 22 (a) was applicable where the grantor had the power to withhold the distribution of the trust income to beneficiaries at will coupled with broad powers over the administration of the trust funds. See also Lorenz Iversen, 3 T.C. 756. The fact that the trust was not a so-called short term trust does not render the doctrine of Helvering v. Clifford, supra, inapplicable. Warren v. Commissioner, 133 Fed (2d) 312; Williamson v. Commissioner, 132 Fed. (2d) 489; Verne Marshall, supra;Frederick B. Rentschler, 1 T.C. 814. There can be no doubt, we think, that for the period during which the grantor had the right to dispose of both the income and principal of the trust with the consent of any of the trustees, the trustees being his wife and brothers who held no adverse interest and who were not under any fiduciary obligations to any beneficiary (cf. Helvering v. Stuart, supra), *214 the grantor remained substantially the owner of the trust property and is taxable on all of the income. On December 9, 1937, the grantor formally surrendered his right to designate the beneficiaries of the trust. Apparently that right then passed to his wife, who, under the provisions of the trust agreement, was authorized to make the designations upon the grantor's failure to do so. The grantor did not release his right to designate the beneficiaries in favor of any known or ascertainable beneficiary. Cf. Sanford's Estate v. Commissioner, 308 U.S. 39. It was still necessary for the beneficiaries to be designated from year to year either by the grantor's wife or by the trustees. There was no change in the original trust agreement that no beneficiary should "be deemed to have any vested interest in the benefits under this instrument, or in any of the income or principal." The fiduciary returns show that there were 13 distributees of the trust in 1936, 27 in 1937, and 15 in 1938. Helvering v. Stuart, supra, is distinguishable. There the grantor created trusts for each of his three children naming himself, his wife, *215 and his brother trustees. The power to change the beneficiaries was lodged in the wife and brother. The Circuit Court of Appeals for the Seventh Circuit held, reversing 42 B.T.A. 1421, that under the laws of Illinois the grantor's wife and brother, the co-trustees, did not have the power to name the grantor a beneficiary of the trust, and that sections 166 and 167 were not applicable. The court reasoned that the trustees' diversion of the trust property to the grantor would have constituted a violation of their fiduciary obligations to the beneficiaries, saying: * * * The power of the court exists solely for the protection of the right of the grantor and the beneficiaries (see Rollins v. Helvering, supra [92 Fed. (2d) 390], and the laws of Illinois in this respect are applicable to this case. * * * The United States Supreme Court affirmed Helvering v. Stuart, supra, saying that: One cannot say that it would be an arbitrary or unreasonable or even an unlikely holding on the part of the courts of Illinois to conclude that under the terms of these trusts, equity ought to and would prevent the wife and brother of the donor, *216 claiming authority under the provisions of paragraph nine of the indenture, from vesting the property in themselves or in the donor or in others for the benefit of themselves or the donor, to the detriment of the present beneficiaries. * * * [Italics supplied.] Also in Helvering v. Bok (C.C.A., 3rd Cir.), 132 Fed. (2d) 365, there were named beneficiaries to whom the trustees were under a fiduciary duty. We do not think that the grantor materially changed the situation by shifting the right to name the recipients of the trust income from himself to his wife, who had no beneficial interest in the trust property and who as a trustee had no duty to any beneficiary which might have conflicted with the grantor's control over the disposition of the trust property. There was never any change in the declared purpose of the trust to afford "a certain degree of permanency" to the payments which the grantor and his wife had been making "without, however, interfering with the discretion of the said Walter A. May and his wife, * * * to increase any specific contribution or decrease the same, or discontinue it and give it elsewhere, or to use both principal *217 and income of the fund herein provided for in such ways and for such general purposes above referred to as they may see fit." Where a trust of the character of the one under consideration is involved it makes but little practical difference whether the grantor himself reserves the right to say to whom the income shall be paid or whether he gives that right to his wife. The wife has no beneficial interest and, being a trustee, is prohibited from exercising her power so as to realize any personal benefit. The absence of any vested rights in any beneficiary and the failure of the trust agreement to designate any definite or definitely ascertainable beneficiary leave doubt as to whether there was ever a valid enforceable trust. Where the owner of property transfers it upon an intended trust for indefinite or general purposes, not limited to charitable purposes, or declares himself trustee for such purposes, and there is no definite or definitely ascertainable beneficiary designated, no trust is created. * * * [Restatement of the Law, Trusts, § 123]. If a trust has been created, it results in the vesting of property rights in the cestuis with regard to the trust subject-matter. *218 * * * [Bogert, Trusts and Trustees, Vol. 4, § 993]. In Union Trust Co. of Pittsburgh v. McCaughn, 24 Fed. (2d) 459, the court said: It is evident that the trust failed. It is well settled that, in order to create a valid express trust, there must be a certain beneficiary named in the declaration of trust. "If there is a single postulate of the common law, established by an unbroken line of decision, it is that a trust without a certain beneficiary who can claim its enforcement, is void, whether good or bad, wise or unwise." Levy v. Levy, 33 N. Y. 107. "But if no cestui que trust is named, or so designated that he can be identified, the court cannot carry a trust into effect, however clearly it may be created in other respects." Perry on Trusts, § 95. See also Reid v. Barry, 112 So. 846; 93 Fla. 849; In re Dewey's Estate, 143 Pac. 124; 45 Utah 98. The trust here was not a charitable trust. Neither in the original trust agreement nor any of the amendments thereto was there a designation of any particular *219 beneficiary, or definitely ascertainable beneficiary. There was never any beneficiary with vested property rights in the subject matter of the trust. We are of the opinion that the respondent did not err in taxing all of the income of the trust to the grantor under section 22 (a). Since the facts in the Mr. and Mrs. Edwin C. May Trust were in substance the same as those in the Mr. and Mrs. Walter A. May Trust the same reasoning and the same ruling applies. In the H. L. May Fund the declared purpose of the trust was substantially the same as in the Mr. and Mrs. Walter A. May Trust. The income and so much of the principal as the trustees might designate were to be paid to the beneficiaries selected each year by a majority of the trustees. Originally the trustees were the grantor and his two brothers, Walter A. and Edwin C. May. The grantor resigned as a trustee on March 23, 1937, and on May 10, 1937, his daughter, Katherine E. Hyam, who was one of the two persons named to receive the principal of the trust upon the grantor's death, was appointed a trustee. There was never any change in the provision of the original trust agreement giving a majority of the trustees the power to name *220 the income beneficiaries from year to year. Therefore, after May 10, 1937, the trust property was held by the grantor's two brothers and his daughter as trustees with the power, by majority action, to pay the income and such part of the principal as they might choose to such "deserving persons, associations and corporations" as they might designate each year, and upon the death of the grantor to pay the remaining principal to the daughter and another beneficiary. While this trust, unlike the Mr. and Mrs. Walter A. May Trust, had definite beneficiaries of the remainder of the trust funds, if any, after the death of the grantor, the principal of the trust fund as well as the income might have been distributed at any time to any persons, association, or corporation selected by a majority of the trustees. None of the trustees here had any adverse interest in the trust income. So far as any of the evidence before us shows, they were perfectly free and willing to carry out the grantor's wishes in selecting the beneficiaries. In the absence of any fiduciary obligations to any beneficiaries, the trustees had no reason to resist the wishes of the grantor. While the grantor's daughter, who *221 was a beneficiary of the remainder of the trust principal, was a trustee after May 10, 1937, she alone could not have prevented the other two trustees, the grantor's brothers, who had no such adverse interest, from distributing both income and principal according to the wishes of the grantor. Considering the provision of the trust agreement that no person, association or corporation should have any vested or contingent right either in the income or principal of the trust fund, it is questionable whether even the daughter held any interest adverse to that of the grantor in either the income or principal. We think that the grantor must be held taxable on the trust income under section 22 (a). H. L. May 1931 Trust [The Facts] This trust was established by Herbert L. May on March 21, 1931. The grantor declared himself trustee of property consisting of 16,000 shares of beneficial interest in May Properties Trust and other securities, to pay the income to his wife, Carrie F. May, for one year, or until her death or the death of the grantor, when the trust property was to revest in the grantor or his representatives. The trust was extended from year to year until January 1, 1934, *222 when it was extended for the joint lives of the grantor and his wife. By the amendment of that date the grantor named his brothers, Walter A. and Edwin C. May, as additional income beneficiaries to receive $100 a year each and Emily H. Goetz, secretary to the Mays, to receive $350 per year. The grantor expressly reserved the right to revoke, alter or amend the trust agreement in any manner whatsoever except that he could not so amend it as to receive any of the income or revest in himself title to any of the corpus, except with the consent of one of the beneficiaries. On March 28, 1934, the grantor resigned his trusteeship and named his brothers, Walter A. and Edwin C. May, trustees. On December 13, 1934, the grantor further amended the trust agreement to provide that upon termination of the trust, if the grantor was not then living, one-half of the principal should go to his wife and the other half to "the persons mentioned in said Trust Indenture." On January 10, 1936, the grantor further amended the trust naming himself a trustee to act with the other two trustees, Walter A. and Edwin C. May. On January 1, 1938, the grantor executed a "Re-Declaration" of the trust which provided *223 that upon termination one-half of the principal should be paid to him if living, or if not to his wife, and the other half to the grantor's children. There was also added, after the provision inserted on January 1, 1934, giving the grantor the right to revoke, alter or amend the trust so as to revest in himself the corpus or income only with the consent of a beneficiary, the following provision: "* * * The words "a beneficiary of the trusts" shall be interpreted to mean a beneficiary having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom. * * *" The January 1, 1938, amendment further provided that the trustees in their discretion could transfer any of the shares of stock listed in Exhibit A, a schedule of the trust assets, without consideration, to any person, corporation, association, or trust estate at any time. The assets listed in Exhibit A consisted of 475 shares of preferred stock of Madison Mortgage Corporation, 1,500 shares of Madison Finance Corporation, 16,000 shares of beneficial interest in May Properties Trust, and $29,000 face value of real estate mortgages. The amendment of January 1, 1938, was assented to in writing *224 by the grantor's wife as of that date. As of January 2, 1938, the grantor executed the following instrument: "The word 'substantial' in 'substantial adverse interest' as used in the U.S. Revenue Acts and also in the trust instrument, being open to the criticism of indefiniteness both from the standpoint of quantity and of possible changes in income or interest, I hereby interpret it so as to designate Carrie F. May, and/or Dorothy M. Rogers and/or Katherine E. Hyam, as having at this time a substantial adverse interest in any revesting of corpus in me, and in any distribution to me and/or accumulation for me of income, by amendment and/or alteration of the trust instrument, this interpretation to remain in force until a re-interpretation, if any, by me by reason of material changes in the interests, of any or all of the persons named in the trust instrument, in the corpus and/or income. To the extent to which such interpretation may be construed as an amendment and/or alteration of the trust instrument, the said instrument is to be considered amended and/or altered accordingly." The respondent determined in his deficiency notice that the income of the trust for 1938 amounting to *225 $9,820 is taxable to the grantor. Previously the respondent had made a similar ruling as to the years 1934 and 1935 from which the grantor appealed to the United States District Court for the Western District of Pennsylvania. The court sustained the Commissioner's determination, Herbert L. May v. United States, decided October 23, 1940, (reported at 27 A.F.T.R. 1167), holding that section 166 was applicable, since the grantor reserved the right to revoke, alter or amend the trust with the consent of any beneficiary and since there were beneficiaries of the trust who did not have a "substantial adverse interest," namely, the grantor's two brothers who were entitled to receive $100 annually. The net income of the trust was $7,792.62 in 1934 and $9,710.44 in 1935. In our present taxable year 1938 the grantor still retained the right to revoke, alter or amend the trust with the consent of "a beneficiary of the trust" but with the proviso in the January 1, 1938, amendment that "The words 'a beneficiary of the trusts' shall be interpreted to mean a beneficiary having a substantial adverse interest in the disposition of such part of the corpus or the income *226 therefrom," and the further amendment of January 2, 1938, by which the grantor sought to give his interpretation of the term "substantial adverse interest" and to designate certain beneficiaries whose interest he considered substantial and adverse. Obviously the January 1 and 2, 1938, amendments to the trust agreement were for the purpose of relieving the grantor of liability for tax on the income of the trust under sections 166 and 167. Whether they served that purpose we do not need to decide. In the taxable year the grantor still retained the right to alter or amend the trust agreement in any respect not beneficiary to himself, within the purview of sections 166 and 167, without the consent of any other person. That power gave him the right to change the beneficiaries or to increase, decrease or cut off entirely the interest of any beneficiary. In short, it left him in absolute control of the disposition of the income and principal except that he could not have it distributed to or held for future distribution to himself. That power, added to the powers over the administration of the trust funds which the grantor held as one of the trustees, his two brothers who had no substantial *227 adverse interests being the other trustees, left the grantor with sufficient elements of ownership in the trust property to render him liable for tax on the income thereof under section 22 (a). Commisisoner v. Buck, supra.Cf. also Louis-Stockstrom, supra, and Lorenz Iversen, supra, where the grantors had the right to withhold the distributions of the income to the beneficiaries but not the right to divest or shift the beneficial interests. In their brief petitioners offer no argument as to this particular trust but submit that the argument made on behalf of the Mr. and Mrs. Edwin C. May Trust and the Mr. and Mrs. Walter A. May Trust applies. The facts are somewhat different but, for reasons stated above, we think the same result must be reached. Loss on Stock of Madison Mortgage Corporation [The Facts] Petitioner Herbert L. May was one of the promoters and a stockholder of Madison Mortgage Corporation, a corporation organized about 1925 for the purpose of dealing in mortgages on real estate located in and about the City of New York. Petitioner subscribed for, and obligated himself *228 to purchase 10 percent of its capital stock amounting to $100,000. The stock was not listed on any exchange and there was no ready market for it. By giving his written guaranty against losses petitioner induced Elsa Brill, wife of his physician, and Emily H. Goetz, for many years secretary to the Mays, to purchase some of the stock for which he had subscribed. He gave them his written guaranty to repurchase such shares at the price which they had paid plus all unpaid dividends thereon at any time upon 30 days' written notice. The agreement provided that petitioner could relieve himself of the obligation by giving six months' notice. Under this agreement and during 1926 Elsa Brill purchased 30 shares and Emily H. Goetz 20 shares of 8 percent preferred stock of the company. On March 28, 1928, petitioner purchased 10 shares of the 7 percent preferred stock of the company at a cost of $1,000 for the account of his aunt, Ada F. Calisher. It is stipulated that: "* * * petitioner, in the year 1920 and ever since that year, had a safekeeping account, in trust for Mrs. Calisher, in which there were certain shares of stock, the income of which she received quarterly. These shares were, for *229 convenience, carried in the name of Herbert L. May, the petitioner. Petitioner on March 28, 1928, purchased for said account 10 shares of the 7%preferred stock from the Madison Mortgage Corporation for $1000. The said corporation paid dividends until July 1, 1931, and two scrip dividend certificates in 1931." In 1933, pursuant to his written guaranty, petitioner purchased from Elsa Brill the 30 shares which she had acquired in 1926 at a total cost of $3,248 and in 1935 he purchased from Emily H. Goetz the 20 shares which she had previously purchased at a cost of $2,520. He transferred all of those shares to the H. L. May 1931 Trust. In addition to the 50 shares referred to above, petitioner and the H. L. May 1931 Trust in 1936 held other shares of the Madison Mortgage Corporation and scrip dividends thereon, including the following which petitioner had purchased from Elsa Brill, Emily H. Goetz and Ada F. Calisher during the period 1932 to 1936, inclusive: Cost
30 shares Common Stock, purchased by
petitioner from Elsa Brill, January
11, 1933
$ 75.00
20 shares Common Stock, purchased by
petitioner from E. H. Goetz, April
1, 1935
50.00
10 shares 7% preferred, purchased by
petitioner from Ada F. Calisher,
March 13, 1936
1,014.19
Scrip Dividends, purchased by peti-
tioner from Elsa Brill, January 11,
1933
120.00
Scrip Dividends, purchased by peti-
tioner from Ada F. Calisher, June
7, 1932
35.00
Scrip Dividends, purchased by peti-
tioner from E. H. Goetz, April 1,
1935
80.00
Total
$1,374.19
*230 In his deficiency notice the respondent allowed petitioner a loss deduction in 1936 of $45,350 on other shares of the Madison Mortgage Corporation stock which were held either by petitioner or the H. L. May 1931 Trust and which are not here in controversy. Petitioner now claims the additional deduction of $7,142.19 being the sum of the above amounts of $3,248, $2,520, and $1,374.19. It is petitioner's contention that he should be allowed a loss deduction in 1936 of the amounts which he paid for the shares of stock and scrip dividends purchased from Elsa Brill, Emily H. Goetz, and Ada F. Calisher as shown above, including those assigned to the H. L. May 1931 Trust if the income of the trust for 1936 is taxable to him as grantor. Respondent's position is that the petitioner did not acquire the shares of stock and scrip dividends in the course of his business or in transactions entered into for profit and that the losses claimed are therefore not deductible under the statute. There is no evidence before us that petitioner was carrying on any trade or business and it is undoubtedly true, as the respondent contends, that petitioner did not purchase the shares in question with any *231 expectation of making a profit on them. If those purchases should be taken as the beginning of the transactions which culminated in the losses we would have to say that they were not transactions entered into for profit, within the meaning of section 23 (e) of the 1936 Act. However, we think that the transactions had their origin not in those purchases but in petitioner's participation in the organization and promotion of the corporation. As one of the promoters petitioner had contracted to subscribe for 10 percent of the company's stock. Undoubtedly his purpose and expectations were to make profit. The respondent so recognized in allowing petitioner a loss deduction in 1936 on the shares which he initially purchased. Petitioner was bound under his stock subscription for his portion of the capital and by inducing others to take some of the stock he was to that extent relieved of his obligation. His guaranty against losses on the stock and the purchases which he made under that guaranty were parts of the same general undertaking. In this respect the facts here are materially different from those in Goldsborough v. Burnet, 46 Fed. (2d) 432, and Frank G. Hogan, 35 B.T.A. 26. *232 cases upon which the respondent relies; where the taxpayers voluntarily and gratuitously guaranteed others against losses on transactions in which they themselves had no financial interests. In R. W. Hale, 32 B.T.A. 356, we allowed a taxpayer a loss deduction of the amount which he had paid out in the taxable year upon his written guaranty of stock which he had previously sold to others. We found that the taxpayer's repurchase of the stock under the guaranty related back to his original acquisition of it and was a part of the same transaction. Here petitioner's promotion of the corporation and his stock subscription agreement marked the origin of the transactions which resulted in the losses. Cf. Yoder v. Nauts, 34 Fed. (2d) 450; Tams v. United States, 33 Fed. Supp. 764; Marjorie Fleming Lloyd-Smith. 40 B.T.A. 214. Cf. also Dresser v. United States, (Ct. Cls.), 55 Fed. (2d) 499. The authorities are to the effect that an amount paid out during the taxable year under a legal liability upon a guaranty contract made in the course *233 of business or in a transaction entered into for profit is deductible as a loss of the year in which it is paid. All of petitioner's purchases here of the stock and scrip dividends in question were in years prior to 1936, the year in which they became worthless. However, petitioner's loss was not determined or determinable until 1936. Presumably the stock had value in the years when petitioner acquired it since it is stipulated that it became worthless in 1936. We think that the deduction is allowable in 1936. The above discussion relates only to the shares of stock and scrip dividends which petitioner purchased from Elsa Brill and Emily H. Goetz. As to the 10 shares of 7 percent preferred stock which he purchased from his aunt, Ada F. Calisher, on March 13, 1936, for $1,014.19 and the scrip dividend of $35 purchased in 1932, the situation is different. We must assume in the absence of evidence to the contrary that these shares were worthless when petitioner purchased them in 1936. It is stipulated that they became worthless in that year. The evidence fails to show that petitioner was under any legal obligation to purchase the shares from Ada F. Calisher or that any claim was ever *234 made against him on that basis. The stipulation is that petitioner had "a safekeeping account" for Mrs. Calisher and that he purchased the shares in 1928 "for said account." No facts are shown on which petitioner could be held liable either as agent or trustee for losses in the account. Presumably petitioner invested the funds entrusted to him according to his best business judgment. He did not give any guarantee against losses and did not incur any personal liability in the transactions The profits, if there had been any, would not have been his nor were the losses. Cf. Goldsborough v. Burnet, supra.
Decisions will be entered under Rule 50. Footnotes
1. The term petitioners as used hereinafter will include Walter A. May, deceased, whose death occurred after his petition herein was filed and whose estate is now the petitioner in Docket No. 110942.↩